TURNER BOYD SERAPHINE LLP
Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Jacob S. Zweig (State Bar No. 296129)
zweig@turnerboyd.com
Bethany Bengfort (State Bar No. 312507)
bengfort@turnerboyd.com
Alexander Krois (State Bar No. 334346)
krois@turnerboyd.com
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: (650) 521-5930

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC IRELAND MANUFACTURING UNLIMITED CO. and MEDTRONIC VASCULAR GALWAY UNLIMITED CO., | Case No. 3:25-cv-05881 |
| Plaintiffs, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| vs. | **JURY TRIAL DEMANDED** |
| RECOR MEDICAL, INC. | |
| Defendant. | |

Plaintiffs Medtronic Ireland Manufacturing Unlimited Co. ("Medtronic Ireland") and Medtronic Vascular Galway Unlimited Co. ("Medtronic Galway") (collectively, "Plaintiffs") file this Complaint for Patent Infringement against Defendant Recor Medical, Inc. ("Recor") alleging as follows:

## NATURE OF THE ACTION

1.      This is an action under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for infringement of U.S. Patent No. 8,845,629 ("the '629 Patent") and U.S. Patent No. 11,801,085 ("the '085 Patent") (collectively, the "Asserted Patents").  A true and accurate copy of the '629 Patent is attached hereto as Exhibit A.  A true and accurate copy of the '085 Patent is attached hereto as Exhibit B.

## THE PARTIES

2.      Medtronic Ireland is an Irish corporation with a principal place of business in Dublin, Ireland.

3.      Medtronic Galway is an Irish corporation with a principal place of business in Galway, Ireland.

4.      On information and belief, Recor is a Delaware corporation with a principal place of business in Palo Alto, California.

## JURISDICTION AND VENUE

5.      This is a civil action for infringement that arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*  This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a).

6.      This Court has personal jurisdiction over Recor in this action because Recor has committed acts of patent infringement and has regularly and systematically conducted and solicited business in this District, by and through at least its headquarters in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) at least because Recor has committed acts of infringement in this District and has regular and established places of business in this District, specifically its headquarters at 1049 Elwell Court, Palo Alto, California 94303.

**BACKGROUND**

**Medtronic's Pioneering Activities in Renal Denervation**

8.      Plaintiffs are two Medtronic companies within a broader global group of related Medtronic entities (collectively, "Medtronic").  Medtronic is one of the world's largest medical technology, services, and solutions companies with the focus of alleviating pain, restoring health, and extending life for millions of people around the world.

9.      Among its areas of specialty, Medtronic provides products and services for the treatment of congestive heart failure ("CHF") and hypertension.  CHF occurs when a patient's heart is not pumping enough blood to meet the body's needs.  Hypertension occurs when a patient's blood pressure is too high.

10.      Sympathetic nerve activity of the kidneys is tied to the constriction of blood vessels and decreased renal blood flow that afflicts patients with CHF and hypertension. Catheter-based renal denervation ("RDN") is a treatment for these conditions and involves the thermally induced modulation of the renal sympathetic nerves by applying energy to them from within the renal vasculature.  For patients with CHF, RDN looks to halt the downward spiral of their condition, in which the heart becomes damaged such that blood flow to the body's organs is reduced, kidney function is altered, the heart's workload is increased, and the heart's capacity to pump blood to the organs is further decreased.  For patients with renal hypertension, RDN looks to overcome the low efficacy and safety of surgical approaches to severing the renal nerves.

11.      Medtronic, specifically including Plaintiffs, is a pioneer in RDN treatment. Medtronic's Symplicity Spyral™ renal denervation (RDN) system ("Symplicity Spyral RDN system") is a novel intervention for hypertension treatment.  The Symplicity Spyral RDN system delivers precisely controlled and targeted radiofrequency (RF) energy to the renal nerves and disrupts the overactive sympathetic signaling between the kidneys and brain to reduce blood pressure.

12.      In operation, the catheter of the Symplicity Spyral RDN system is delivered using a guidewire into the patient's renal arteries.  The system features an array of electrodes

and is designed so that during treatment the patient's blood flow is not occluded so as to naturally irrigate and cool the arterial wall, protecting it during the procedure.  A generator controls energy delivery from the Symplicity Spyral RDN system.  The generator allows the physician to monitor the impedance and temperature measurements of the electrodes.  RF energy is delivered through the electrodes to ablate the renal nerves.  The catheter is then removed from the patient.

13.    The Symplicity Spyral RDN system has been commercially available in Europe since late 2013, when Medtronic received Conformité Européene (CE) marking approval for the Symplicity Spyral system, indicating conformity with high European Union safety, health, and environmental protection requirements.

14.    In March 2020, the U.S. Food & Drug Administration ("FDA") granted the Symplicity Spyral RDN system "breakthrough" status for patients with uncontrolled hypertension.  Hypertension, or high blood pressure, impacts nearly 1 billion adults worldwide, and is the leading modifiable cause of heart attack, stroke, and death.  Despite available treatment with medications and lifestyle changes, blood pressure remains uncontrolled for many patients.  Nearly 80% of adults with hypertension do not have it under control and half of hypertension patients become non-adherent to medication within one year.

15.    The FDA Breakthrough Device Program is intended to help patients receive more timely access to certain technologies, such as renal denervation, that have the potential to provide more effective treatment or diagnosis for life-threatening or irreversibly debilitating diseases or conditions.  Among other things, the FDA Breakthrough Device Program provides for interactive and timely communications with FDA, prioritized review of submissions to FDA, efficient and flexible clinical study design, expedited review of preapproval manufacturing and quality systems compliance, and a pre/postmarket balance of data collection.

16.    In November 2023, the FDA approved the Symplicity Spyral RDN system for use in the United States.

17.    In 2003, a patent application for an invention to treat CHF and hypertension using RDN was published, and it became public knowledge that research and work was being

done on treating these conditions by inserting a catheter into renal blood vessels and using it to modulate adjacent nerves. That patent application was followed by others, filed by inventors working with a company called Ardian, Inc. In 2010, Medtronic acquired Ardian, Inc., and since then has continued to innovate in the field of RDN.

18.     The '629 Patent is titled "Ultrasound Apparatuses for Thermally-Induced Renal Neuromodulation" and issued on September 30, 2014. The '629 Patent issued from U.S. Patent Application Serial No. 12/754,337 filed on April 5, 2010.

19.     Prior to issuance, the '629 Patent inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 12/754,337 to Ardian, Inc. The assignment was recorded at the USPTO at Reel/Frame 024668/0235 on July 12, 2010, and a true and accurate copy is attached hereto as Exhibit C.

20.     Ardian, Inc. assigned all right, title, and interest in U.S. Patent Application Serial No. 12/754,337 to Medtronic Ardian LLC. The assignment was recorded at the USPTO at Reel/Frame 030531/0816 on June 3, 2013, and a true and accurate copy is attached hereto as Exhibit D.

21.     Medtronic Ardian LLC later assigned all right, title, and interest in U.S. Patent Application Serial No. 12/754,337 to Medtronic Ardian Luxembourg S.a.r.l. The assignment was recorded at the USPTO at Reel/Frame 030531/0717 on June 3, 2013, and a true and accurate copy is attached hereto as Exhibit E.

22.     Medtronic Ireland is the present owner, by valid assignment, of the entire right, title, and interest in and to the '629 Patent. The assignment from Medtronic Ardian Luxembourg S.a.r.l. to Medtronic Ireland was executed on June 2, 2020, and recorded at the USPTO at Reel/Frame 065000/0486 on September 22, 2023, and a true and accurate copy is attached hereto as Exhibit F.

23.     Medtronic Galway is the exclusive licensee of certain rights in the '629 Patent, including the exclusive rights to make and have made and to exclude others from making and having made products that practice the patented inventions.

24.    The claimed invention of the '629 Patent is directed to a novel apparatus for achieving renal neuromodulation via thermal heating using an ultrasound transducer.  Ex. A, Title, Abstract.

25.    The '629 Patent is valid and enforceable.

26.    Medtronic's innovations in the field of RDN also include the methods and systems for thermally-induced renal neuromodulation claimed in the '085 Patent.

27.    The '085 Patent is titled "Devices For Thermally-Induced Renal Neuromodulation" and issued on October 31, 2023.  The '085 Patent issued from U.S. Patent Application Serial No. 16/938,404 filed on July 24, 2020.

28.    Prior to issuance, the '085 Patent inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 16/938,404 to Ardian, Inc.  The assignment was recorded at the USPTO at Reel/Frame 064647/0269 on August 21, 2023, and a true and accurate copy is attached hereto as Exhibit G.

29.    Ardian, Inc. assigned all right, title, and interest in U.S. Patent Application Serial No. 16/938,404 to Medtronic Ardian LLC.  The assignment was recorded at the USPTO at Reel/Frame 064657/0920 on August 21, 2023, and a true and accurate copy is attached hereto as Exhibit H.

30.    Medtronic Ardian LLC later assigned all right, title, and interest in U.S. Patent Application Serial No. 16/938,404 to Medtronic Ardian Luxembourg S.a.r.l.  The assignment was recorded at the USPTO at Reel/Frame 064647/0531 on August 21, 2023, and a true and accurate copy is attached hereto as Exhibit I.

31.    Medtronic Ireland is the present owner, by valid assignment, of the entire right, title, and interest in and to the '085 Patent.  The assignment of U.S. Patent Application Serial No. 16/938,404 from Medtronic Ardian Luxembourg S.a.r.l. to Medtronic Ireland was recorded at the USPTO at Reel/Frame 064647/0605 on August 21, 2023, and a true and accurate copy is attached hereto as Exhibit J.

1    32.    Medtronic Galway is the exclusive licensee of certain rights in the '085 patent,

2    including the exclusive rights to make and have made and to exclude others from making and

3    having made products that practice the patented inventions.

4    33.    The claimed invention of the '085 Patent is directed to methods and systems for

5    thermally-induced neuromodulation.  Ex. B, Title, Abstract.

6    34.    The '085 Patent is valid and enforceable.

7    **Recor's Infringing Paradise Ultrasound Renal Denervation System**

8    35.    Recor has developed a catheter-based RDN system called the Paradise

9    Ultrasound Renal Denervation System (the "Accused Product").

10    36.    Recor describes the Accused Product on its website as follows:

11    With exclusive features designed to ensure a safe and effective procedure, the
     Paradise system offers a proven therapy option to lower your patients' blood
12    pressure. … The Paradise uRDN system treats hypertension by ablating the nerves
     around the renal arteries, disrupting the overactive sympathetic nerves that can
13    cause hypertension.

14    Ex. K (https://www.recormedical.com/paradise-ultrasound-rdn-system/, accessed on July 9,

15    2025).

16    37.    On November 7, 2023, Recor announced that the Accused Product was approved

17    by the FDA for the treatment of hypertension.

18    38.    Recor's making, use, offers to sell, sales, and/or importation of the Accused

19    Product in and into the United States directly infringes the Asserted Patents.  Recor also induces

20    its customers and end-users of the Accused Product to directly infringe the Asserted Patents.

21    39.    As set forth in more detail below, each element of at least one claim of each of

22    the Asserted Patents is literally present in the Accused Product.  To the extent that any element

23    is not literally present, each such element is present or practiced under the doctrine of

24    equivalents.

25    40.    On information and belief, Recor currently manufactures the Accused Product at

26    its facility in Palo Alto, California.

27

28

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,845,629)

41.    Plaintiffs re-allege and incorporate each of the allegations in Paragraphs 1-40 above as though fully set forth herein.

42.    Recor makes, uses, sells, offers for sale, and/or imports the Accused Product and related components in and into the United States.

43.    Recor directly infringes—literally and/or under the doctrine of equivalents—the '629 Patent by making, using, selling, offering for sale, and/or importing the Accused Product and related components in and into the United States.

44.    For example, Recor directly infringes—literally and/or under the doctrine of equivalents—at least Claim 1 of the '629 Patent by making, using, selling, offering for sale, and/or importing the Accused Product and related components in and into the United States.

45.    Claim 1 of the '629 Patent recites:

1[pre].  An ultrasound apparatus for thermally-induced renal neuromodulation, the apparatus comprising:

[1a] a catheter sized and shaped for delivery within a blood vessel to a vicinity of neural fibers that contribute to renal function;

[1b] an ultrasound transducer carried by the catheter, wherein the ultrasound transducer is configured to transmit ultrasound energy waves to target renal neural fibers outside of the blood vessel to thermally induce modulation of target neural fibers while protecting non-target tissue in the blood vessel wall from thermal injury; and

[1c] an expandable member carried by a distal region of the catheter,

wherein the expandable member is configured to vary between a reduced configuration for delivery and retrieval and an expanded deployed configuration, and

[1d] wherein the ultrasound transducer is positioned on a shaft of the catheter and within the expandable member.

Ex. A, Claim 1.

46.    The Accused Product practices each limitation of Claim 1 of the '629 Patent.

47.    To the extent the preamble is construed to be limiting, the Accused Product is "[a]n ultrasound apparatus for thermally-induced renal neuromodulation."

48. Recor's website explains that the Accused Product, "the Paradise Ultrasound Renal Denervation (uRDN) system[,] is designed to offer a proven therapy option to lower your patients' blood pressure." Ex. K (https://www.recormedical.com/paradise-ultrasound-rdn-system/, accessed on July 9, 2025).

49. A Paradise Ultrasound Renal Denervation System (uRDN) Sponsor Executive Summary prepared for an August 22, 2023 meeting of the Circulatory Systems Devices Panel of the FDA ("Sponsor Executive Summary") (attached hereto as Exhibit L) states that "The Paradise System uses a novel catheter-based procedure to deliver ultrasound energy circumferentially to thermally ablate and disrupt overactive sympathetic nerves surrounding the renal arteries." Ex. L, p. 15.

50. An FDA Executive Summary Prepared for the August 22, 2023 Meeting of the Circulatory System Devices Panel Meeting for Recor Medical's Paradise Ultrasound Renal Denervation System ("FDA Executive Summary") (attached hereto as Exhibit M) likewise states that "The Paradise uRDN System is a catheter-based system that delivers ultrasound energy circumferentially to thermally ablate and disrupt renal sympathetic nerve activity with the goal of reducing systemic arterial blood pressure." Ex. M, p. 11.

51. The Accused Product has "[1a] a catheter sized and shaped for delivery within a blood vessel to a vicinity of neural fibers that contribute to renal function."

52. The Sponsor Executive Summary indicates that the Accused Product has a catheter sized and shaped for delivery within a blood vessel to a vicinity of neural fibers that contribute to renal function, as follows: "The Paradise System uses a novel catheter-based procedure to deliver ultrasound energy circumferentially to thermally ablate and disrupt overactive sympathetic nerves surrounding the renal arteries." Ex. L, p. 15. The Sponsor Executive Summary further states that "The Paradise Catheter is introduced via femoral access under fluoroscopic guidance and advanced into the distal end of the main renal artery through a standard 6-French introducer sheath." Ex. L, p. 18.

53.     The FDA Executive Summary likewise states that "The subject device of this PMA utilizes intraarterial catheters to deliver ultrasound energy through the renal arterial wall to ablate the adjacent sympathetic nerves."  Ex. M, p. 9.

54.     The Accused Product's catheter is depicted in Figure 3 from the FDA Executive Summary, reproduced below:



*Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter*

Ex. M, p. 12.

55.     The Accused Product has "[1b] an ultrasound transducer carried by the catheter, wherein the ultrasound transducer is configured to transmit ultrasound energy waves to target renal neural fibers outside of the blood vessel to thermally induce modulation of target neural fibers while protecting non-target tissue in the blood vessel wall from thermal injury."

56.    In the Accused Product, the "ultrasound transducer carried by the catheter" is depicted in the figures from FDA Executive Summary reproduced below.  The first image shows the catheter as part of the system.  The second image shows that the ultrasound transducer is "carried by the catheter."



Figure V-1: Paradise System: Catheter, Generator, Cartridge and Connection Cable

**Figure 2. Paradise uRDN System**



**Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter**

Ex. M, p. 12.

57.    The Accused Product's "ultrasound transducer is configured to transmit ultrasound energy waves to target renal neural fibers outside of the blood vessel to thermally

induce modulation of target neural fibers while protecting non-target tissue in the blood vessel wall from thermal injury." The narration to a Recor video provides:

> The Paradise System consists of an ultrasound delivery catheter and control unit, which together manage the uniform delivery of ultrasound energy with the aim of disabling the sympathetic nerves that lie along the walls of the renal arteries while simultaneously cooling the surface of the artery wall to help prevent damage during the energy delivery process.

> The Paradise Catheter is first advanced to the distal end of the main renal artery where there is a high concentration of sympathetic nerve activity due to the branching of the nerves just behind the arterial wall. Recent scientific research has indicated that a majority of the nerves are located within six millimeters at depth behind the artery wall.

> Through a proprietary algorithm, the Paradise control unit regulates the inflation of the balloon with sterile water, automatically centering the ultrasound transducer in the artery. The control unit also continuously manages the balloon pressure to ensure a constant low pressure is being applied to allow gentle vessel wall contact.

> The Paradise control unit manages the uniform delivery of ultrasound energy circumferentially around the artery wall where the sympathetic nerves are located. The circulation of fluid in the balloon during the heating cycle has a cooling effect at the surface of the artery while the nerves are being heated and damaged at depth.

Available at https://www.youtube.com/watch?v=pNua5-cnxXI, accessed on July 9, 2025.

58.    The FDA Executive Summary likewise states that the ultrasound transducer "achieve[s] target tissue ablation" while protecting non-target tissue using "sterile water circulated within the balloon as a coolant" and by "target[ing] circumferential peri-arterial tissue ablation in the range of 1 mm to 6 mm from the arterial lumen," which is achieved by setting the "operating frequency range" and "the transducer length, thickness, and resonant frequencies," as follows:

> The Paradise uRDN System requires the use of commercially available sterile water circulated within the balloon as a coolant during thermal ablation to prevent arterial wall injury. Figure 2 shows the components of the Paradise uRDN System.

> Recor Medical designed the Paradise uRDN System to target circumferential peri-arterial tissue ablation in the range of 1 mm to 6 mm from the arterial lumen. To achieve target tissue ablation, the transducer is set at an operating frequency range of 8.7 - 9.3 MHz; the transducer length, thickness, and resonant frequencies are matched to the operating frequency range to produce consistent acoustic output.

> The Paradise Catheter has a distal balloon pressurized with sterile water to an average of 1.8 atmospheres. The pressurized balloon centers and stabilizes ultrasound transducer positioning within the artery (Figure 3) and provides a circulating conduit to cool the renal artery wall.

Ex. M, p. 11.  Upon information and belief, the size, shape, position, and the amount of energy output by the ultrasound transducer are calculated to protect non-target tissue, including in the blood vessel wall.

59.    The Sponsor Executive Summary likewise states that "A single use 6-French delivery catheter (transducer centered within the balloon), which delivers ultrasound energy and cools the surface of the artery wall to protect the artery from thermal injury during the energy delivery process."  Ex. L, p. 18.  The Sponsor Executive Summary further states that "Once the Paradise Catheter is in position, the Paradise Generator controls the ultrasound energy delivery parameters through an automated process and actively adjusts the energy based on catheter size to achieve a consistent target depth."  *Id.*  The Sponsor Executive Summary further states that "The target ablation region has been chosen to ensure minimal-to-no damage to the renal arterial wall …."  *Id.* at pp. 51-51.

60.    The Accused Product has "[1c] an expandable member carried by a distal region of the catheter, wherein the expandable member is configured to vary between a reduced configuration for delivery and retrieval and an expanded deployed configuration."

61.    The Accused Product's "expandable member" (a balloon) is "carried by a distal region of the catheter" as depicted and indicated in the caption of the figure from the FDA Executive Summary reproduced below:



**Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter**

Ex. M, p. 12.

69.     The Sponsor Executive Summary likewise states that the Paradise Catheter has

"an inflatable balloon at the distal end of the Catheter."  Ex. L, p. 50.

70.     The Accused Product's "expandable member is configured to vary between a

reduced configuration for delivery and retrieval and an expanded deployed configuration."  The

Sponsor Executive Summary states:

> Once the Paradise Catheter is in position, the Paradise Generator controls the
> ultrasound energy delivery parameters through an automated process and actively
> adjusts the energy based on catheter size to achieve a consistent target depth.
> Through a proprietary algorithm, the Generator regulates balloon inflation with a
> coolant (sterile water), automatically centering the ultrasound transducer in the
> artery. Throughout the procedure, the Generator continuously manages balloon
> pressure to ensure consistently low pressure is applied to the vessel wall.
>
> The procedure consists of 2–3 seven-second emissions per main renal artery, and
> up to 1 sonication in an accessory or proximal side branch.  Once delivery at the
> target site is complete, the balloon automatically deflates, and the Paradise Catheter
> can be moved to additional positions.  The Paradise Catheter is removed from the
> body, and the procedure completed according to standard interventional techniques.

Ex. L, p. 18.

71.     The Sponsor Executive Summary further provides:

> Through a proprietary algorithm, the Paradise Generator regulates the inflation of
> the balloon with sterile water, automatically centering the ultrasound transducer in
> the artery. The Generator also continuously manages balloon pressure to ensure a
> constant, low pressure is being applied to allow gentle vessel wall contact. The
> Generator controls the fluid flow rate through the balloon, duration of acoustic
> energy delivery, and total acoustic power delivered; these parameters are fixed and
> nonalterable by the treating physician. …
>
> The balloon is automatically deflated after energy delivery has ended. … Once the
> renal arteries have been treated, the Paradise Catheter is removed from the body
> and the procedure is finished according to standard interventional technique.

Ex. L, p. 51.

72.     The Accused Product practices "[1d] wherein the ultrasound transducer is

positioned on a shaft of the catheter and within the expandable member."

73.     This is depicted in a figure from the FDA Executive Summary reproduced

below:

*Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter*

Ex. M, p. 12.

74.    The Sponsor Executive Summary states that, "The Paradise Catheter (with ultrasound transducer) is a 6-French renal artery catheter with a cylindrical piezoelectric ceramic ultrasound transducer located inside an inflatable balloon at the distal end of the Catheter."  Ex. L, p. 50.

75.    Recor is not and has never been licensed, or otherwise authorized to practice the claims of the '629 Patent.

76.    Recor has been aware of the '629 Patent since at least on or about December 8, 2021, when Medtronic sent a letter to Recor notifying Recor of the German Action.  *See* Ex. N.

77.    Additionally, Recor has been aware of the '629 Patent since at least the filing dates of the complaints in the instant action and the related declaratory judgment actions filed by Recor on January 13, 2022 and May 25, 2022.

78.    Recor actively induces and has actively induced infringement of at least Claim 1 of the '629 Patent since at least on or about December 8, 2021, and no later than the filing dates of the related declaratory judgment actions filed by Recor on January 13, 2022 and May 25, 2022, in violation of 35 U.S.C. § 271(b).

79.    Recor's customers and end-users of the Accused Product directly infringe at least Claim 1 of the '629 Patent, at least by using the Accused Product.

80.    Since at least on or about December 8, 2021 and no later than the filing date of the related declaratory judgment actions filed by Recor on January 13, 2022 and May 25, 2022,

Recor has knowingly induced infringement of at least Claim 1 of the '629 Patent by customers and end-users of the Accused Product with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Product in the United States.

81.    Recor has induced and continues to induce infringement of the '629 Patent at least through activities such as designing, making, selling, offering to sell, importing, marketing, advertising and promoting the infringing products; creating and distributing technical, marketing, promotional, educational, and other product literature for the Accused Product; providing instructions for use of the Accused Product; and offering technical support, training, education, repair, and other services for the Accused Product.

82.    Recor instructs customers and end-users to use the Accused Product, as described in detail above in Paragraphs 43-74, at least through its marketing, promotional, and instructional materials, such as a video describing operation of the Accused Product available on a page of Recor's website titled "Educational Resources."  Available at https://www.recormedical.com/educational-resources/, accessed on July 9, 2025; *see also* Ex. K.

83.    Recor's infringement of the '629 Patent is willful.  Recor had knowledge of the '629 Patent and its infringement of the '629 Patent at least as early as approximately December 8, 2021 when Recor received a letter notifying it of the German Action, and no later than the filing dates of the instant action and the related declaratory judgment actions filed by Recor on January 13, 2022 and May 25, 2022.

84.    Despite knowing that its activities infringe the '629 Patent, Recor continues its activities with the specific intent to infringe, without a good faith belief that it does not infringe the '629 Patent or that the '629 Patent is invalid, or despite an objectively high likelihood that its actions constitute infringement of the '629 Patent and that the '629 patent is not invalid. Recor's infringing actions are egregious, including by its copying of Medtronic's intellectual property and innovations.

85. Because Recor's infringement of the '629 Patent is willful, and its conduct egregious, enhanced damages under 35 U.S.C. § 284 are appropriate in this case.

86. Recor's infringement has damaged and continues to cause damages to Plaintiffs in an amount yet to be determined, of at least a reasonable royalty and/or lost profits.

87. Unless and until enjoined by this Court, Recor will continue to directly infringe as well as induce infringement of the '629 Patent. Recor's infringing acts are causing and will continue to cause irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, a permanent injunction against further infringement is appropriate.

88. This case is exceptional, warranting an award of attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 11,801,085)

89. Plaintiffs re-allege and incorporate each of the allegations in Paragraphs 1-40 above as though fully set forth herein.

90. Recor makes, uses, sells, offers for sale, and/or imports the Accused Product and related components in and into the United States.

91. Recor directly infringes—literally and/or under the doctrine of equivalents—the '085 Patent by making, using, selling, offering for sale, and/or importing the Accused Product and related components in and into the United States.

92. For example, Recor directly infringes—literally and/or under the doctrine of equivalents—at least Claim 1 of the '085 Patent by making, using, selling, offering for sale, and/or importing the Accused Product and related components in and into the United States.

93. Claim 1 of the '085 Patent recites:

1[pre]. A system for renal neuromodulation of a human patient, the system comprising:

[1a] a catheter;

[1b] at least one neuromodulation element carried by a distal portion of the catheter;

[1c] a generator configured to: generate energy sufficient to ablate renal neural fibers adjacent a renal blood vessel of the patient, and deliver the energy, via the at

least one neuromodulation element, to the neural fibers to reduce sympathetic nerve activity in the neural fibers; and

[1d] an expandable positioning element carried by the distal portion of the catheter, wherein the expandable positioning element is configured to receive a cooling fluid configured to remove heat from within the expandable positioning element,

[1e] wherein the distal portion of the catheter, the expandable positioning element, and the at least one neuromodulation element are configured to be positioned in the renal blood vessel of the human patient,

[1f] wherein the expandable positioning element is transformable from a low profile delivery configuration to an expanded configuration, and

[1g] wherein, in the expanded configuration, the at least one neuromodulation element is spaced radially inward from an outer diameter of the expandable positioning element.

Ex. B, Claim 1.

94.    The Accused Product practices each limitation of Claim 1 of the '085 Patent.

95.    To the extent the preamble is construed to be limiting, the Accused Product is "[a] system for renal neuromodulation of a human patient."

96.    The Sponsor Executive Summary states that "The Paradise System uses a novel catheter-based procedure to deliver ultrasound energy circumferentially to thermally ablate and disrupt overactive sympathetic nerves surrounding the renal arteries." Ex. L, p. 15.

97.    The FDA Executive Summary likewise states that "The Paradise uRDN System is a catheter-based system that delivers ultrasound energy circumferentially to thermally ablate and disrupt renal sympathetic nerve activity with the goal of reducing systemic arterial blood pressure." Ex. M, p. 11.

98.    The Accused Product has "[1a] a catheter."

99.    The Sponsor Executive Summary indicates that the Accused Product has a catheter, as follows: "The Paradise System uses a novel catheter-based procedure to deliver ultrasound energy circumferentially to thermally ablate and disrupt overactive sympathetic nerves surrounding the renal arteries." Ex. L, p. 15.

100.    The FDA Executive Summary likewise states that "The subject device of this PMA utilizes intraarterial catheters to deliver ultrasound energy through the renal arterial wall to ablate the adjacent sympathetic nerves." Ex. M, p. 9.

101.    The Accused Product's catheter is depicted in the figures from FDA Executive Summary, reproduced below.  The first image shows the catheter as part of the system.  The second image shows the distal portion of the catheter.



Figure V-1: Paradise System: Catheter, Generator, Cartridge and Connection Cable

*Figure 2. Paradise uRDN System*



*Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter*

Ex. M, p. 12.

102.    The Accused Product has "[1b] at least one neuromodulation element carried by a distal portion of the catheter."

103.    In the Accused Product, the "at least one neuromodulation element carried by a distal portion of the catheter," i.e., the ultrasound transducer, is depicted in the figure and described in the caption from FDA Executive Summary reproduced below.  The image and

caption indicate that the "at least one neuromodulation element" is "carried by a distal portion of the catheter."



**Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter**

Ex. M, p. 12.

104.    The Accused Product has "a generator configured to: generate energy sufficient to ablate renal neural fibers adjacent a renal blood vessel of the patient, and deliver the energy, via the at least one neuromodulation element, to the neural fibers to reduce sympathetic nerve activity in the neural fibers."

105.    The Sponsor Executive Summary states that the Accused Product has a "Generator, which powers the transducer…."  Ex L, p. 50.

106.    The Accused Product's generator is shown in the image below from the FDA Executive Summary:



*Figure 2. Paradise uRDN System*

Ex. M, p. 12.

107.    The Sponsor Executive Summary further states that the Accused Product's "generator" generates "energy" sufficient to "ablate[] renal sympathetic nerves" and "deliver[s]" the energy via the at least one neuromodulation element, i.e., the "transducer," after it is introduced via the catheter to a renal blood vessel, as follows:

The Paradise System consists of 2 main components:

1. The Paradise Generator controls the electronics and fluids for the System; energy delivery; circulation of the cooling fluid; and inflation and deflation of the balloon. A touch screen user interface is designed for ease of use and guides the user through each step of the procedure to ensure safe use. Ultrasound energy is delivered via an automated process to provide acoustic power based on catheter size to achieve a consistent ablation depth across a range of artery sizes.

2. A single use 6-French delivery catheter (transducer centered within the balloon), which delivers ultrasound energy and cools the surface of the artery wall to protect the artery from thermal injury during the energy delivery process. …

The Paradise Catheter is introduced via femoral access under fluoroscopic guidance and advanced into the distal end of the main renal artery through a standard 6-French introducer sheath.

Once the Paradise Catheter is in position, the Paradise Generator controls the ultrasound energy delivery parameters through an automated process and actively adjusts the energy based on catheter size to achieve a consistent target depth. …

The procedure consists of 2–3 seven-second emissions per main renal artery, and up to 1 sonication in an accessory or proximal side branch. …

The Paradise System is a novel device-based therapy that safely ablates renal sympathetic nerves during a simple, one-time procedure to reduce BP in patients with uncontrolled hypertension.

Ex. L, p. 18.

108.    The Sponsor Executive Summary further states that:

The target tissue ablation region is achieved by delivering an energy dose profile that combines thermal energy generation (from tissue ultrasound absorption) in the target tissue region, and thermal energy removal (from convective cooling) at the wall of the renal artery. … The Catheter provides a balance of heating and cooling to deliver the appropriate energy dose while the Generator controls the input parameters to the Catheter (transducer frequency, power, duration, and fluid flow rate) to ensure proper and safe ablation.

Ex. L, p. 51.

109.    The Accused Product's generator is configured "to reduce sympathetic nerve activity in the neural fibers."  For example, the Sponsor Executive Summary states that:

The Paradise System delivers ultrasound energy in the form of heat, circumferentially. Energy is delivered along the length of the transducer resulting in a circumferential ablation band / toroid (~5 mm in length), extending to a mean depth of 6mm. The system has been optimized to deliver energy to a target ablation region (mean 1-6mm from the renal arterial wall) in the peri-adventitial tissue surrounding the renal artery to achieve significant nerve injury. The target ablation region has been chosen to ensure minimal-to-no damage to the renal arterial wall and to non-target tissues (eg, iliopsoas muscle, large or small intestines, ureters) at depth, while maximizing renal sympathetic nerve injury to achieve a reduction in sympathetic nerve activity.

Ex. L, pp. 51-52.

110.    The narration to a Recor video likewise states that "[t]he Paradise System consists of an ultrasound delivery catheter and control unit, which together manage the uniform delivery of ultrasound energy with the aim of disabling the sympathetic nerves that lie along the walls of the renal arteries."  Available at https://www.youtube.com/watch?v=pNua5-cnxXI, accessed on July 9, 2025.

111.    The Accused Product has "[1d] an expandable positioning element carried by the distal portion of the catheter, wherein the expandable positioning element is configured to receive a cooling fluid configured to remove heat from within the expandable positioning element."

112.    The Accused Product's "expandable positioning element carried by the distal portion of the catheter," i.e., the balloon, is shown in the image and described in the caption below from the FDA Executive Summary:



***Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter***

Ex. M, p. 12.

113.    The FDA Executive Summary explains that the Accused Product's "expandable positioning element," i.e., the balloon, accomplishes "positioning" within the artery and receives water as a coolant to remove heat from within (and outside) the balloon:

> The Paradise uRDN System requires the use of commercially available sterile water circulated within the balloon as a coolant during thermal ablation to prevent arterial wall injury. …
>
> The Paradise Catheter has a distal balloon pressurized with sterile water to an average of 1.8 atmospheres. The pressurized balloon centers and stabilizes ultrasound transducer positioning within the artery (Figure 3) and provides a circulating conduit to cool the renal artery wall.

Ex. M, p. 11.

114.    The narration to a Recor video likewise states that:

> Through a proprietary algorithm, the Paradise control unit regulates the inflation of the balloon with sterile water, automatically centering the ultrasound transducer in the artery.  The control unit also continuously manages the balloon pressure to ensure a constant low pressure is being applied to allow gentle vessel wall contact.
>
> The Paradise control unit manages the uniform delivery of ultrasound energy circumferentially around the artery wall where the sympathetic nerves are located. The circulation of fluid in the balloon during the heating cycle has a cooling effect at the surface of the artery while the nerves are being heated and damaged at depth.

Available at https://www.youtube.com/watch?v=pNua5-cnxXI, accessed on July 9, 2025.

115.    The Accused Product also meets the limitation "[1e] wherein the distal portion of the catheter, the expandable positioning element, and the at least one neuromodulation element are configured to be positioned in the renal blood vessel of the human patient."

116.    The image below from the FDA Executive Summary shows, and the caption describes, the "distal portion of the catheter" with "the expandable positioning element" (balloon) and "at least one neuromodulation element" (transducer):



*Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter*

Ex. M, p. 12.

117.    The Sponsor Executive Summary explains that these elements— the distal portion of the catheter, which features the expandable positioning element and the at least one neuromodulation element—are configured to be positioned in the renal blood vessel of the human patient.  For example, it states that "[t]he Paradise System consists of … [a] single use 6-French delivery catheter (transducer centered within the balloon) ….  The Paradise Catheter is introduced via femoral access under fluoroscopic guidance and advanced into the distal end of the main renal artery through a standard 6-French introducer sheath."  Ex. L, p. 18.

118.    The Accused Product also meets the limitation "[1f] wherein the expandable positioning element is transformable from a low profile delivery configuration to an expanded configuration."

119.    For example, the narration to a Recor video explains that the catheter is first delivered to the main renal artery and then the balloon on the distal end of the catheter is inflated:

> The Paradise Catheter is first advanced to the distal end of the main renal artery where there is a high concentration of sympathetic nerve activity due to the branching of the nerves just behind the arterial wall. Recent scientific research has indicated that a majority of the nerves are located within six millimeters at depth behind the artery wall.
>
> Through a proprietary algorithm, the Paradise control unit regulates the inflation of the balloon with sterile water, automatically centering the ultrasound transducer in the artery.

Available at https://www.youtube.com/watch?v=pNua5-cnxXI, accessed on July 9, 2025.

120.    Likewise, the Sponsor Executive Summary states that the balloon is inflated with coolant for the procedure and also "deflates" so it "can be moved:"

> Once the Paradise Catheter is in position, the Paradise Generator controls the ultrasound energy delivery parameters through an automated process and actively adjusts the energy based on catheter size to achieve a consistent target depth. Through a proprietary algorithm, the Generator regulates balloon inflation with a coolant (sterile water), automatically centering the ultrasound transducer in the artery. Throughout the procedure, the Generator continuously manages balloon pressure to ensure consistently low pressure is applied to the vessel wall.
>
> The procedure consists of 2–3 seven-second emissions per main renal artery, and up to 1 sonication in an accessory or proximal side branch. Once delivery at the target site is complete, the balloon automatically deflates, and the Paradise Catheter can be moved to additional positions. The Paradise Catheter is removed from the body, and the procedure completed according to standard interventional techniques.

Ex. L, p. 18.

121.    The Sponsor Executive Summary further provides:

> Through a proprietary algorithm, the Paradise Generator regulates the inflation of the balloon with sterile water, automatically centering the ultrasound transducer in the artery. The Generator also continuously manages balloon pressure to ensure a constant, low pressure is being applied to allow gentle vessel wall contact. The Generator controls the fluid flow rate through the balloon, duration of acoustic energy delivery, and total acoustic power delivered; these parameters are fixed and nonalterable by the treating physician. …
>
> The balloon is automatically deflated after energy delivery has ended. … Once the renal arteries have been treated, the Paradise Catheter is removed from the body and the procedure is finished according to standard interventional technique.

Ex. L, p. 51.

122.    The Accused Product also meets the limitation "[1g] wherein, in the expanded configuration, the at least one neuromodulation element is spaced radially inward from an outer diameter of the expandable positioning element."

123.    For example, the Sponsor Executive Summary states that the "transducer [is] centered within the balloon." Ex. L, p. 18.

124.    Likewise, the neuromodulation element (i.e., the transducer) is depicted in the figure from the FDA Executive Summary reproduced below as being spaced radially inward from an outer diameter of the expandable positioning element (i.e., the balloon):



*Figure 3. Ultrasound Transducer with Balloon at Distal End of Paradise Catheter*

Ex. M, p. 12.

125.    Recor is not and has never been licensed, or otherwise authorized to practice the claims of the '085 Patent.

126.    Recor has knowledge of the '085 Patent as of the date of the filing of the instant action and as of the date of filing and service of counterclaims in the related declaratory judgment action on June 3, 2024.

127.    Recor actively induces and has actively induced infringement of at least Claim 1 of the '085 Patent since at least the date of filing and service of counterclaims in the related declaratory judgment action on June 3, 2024, in violation of 35 U.S.C. § 271(b).

128.    Recor's customers and end-users of the Accused Product directly infringe at least Claim 1 of the '085 Patent, at least by using the Accused Product.

129.    Since at least the date of filing and service of counterclaims in the related declaratory judgment action on June 3, 2024, Recor has knowingly induced infringement of at least Claim 1 of the '085 Patent by customers and end-users of the Accused Product with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts

1    induce infringement, through activities relating to selling, marketing, advertising, promotion,

2    support, training, and distribution of the Accused Product in the United States.

3        130.    Recor has induced and continues to induce infringement of the '085 Patent at

4    least through activities such as designing, making, selling, offering to sell, importing, marketing,

5    advertising and promoting the infringing products; creating and distributing technical,

6    marketing, promotional, educational, and other product literature for the Accused Product;

7    providing instructions for use of the Accused Product; and offering technical support, training,

8    education, repair, and other services for the Accused Product.

9        131.    Recor instructs customers and end-users to use the Accused Product, as described

10   in detail above in Paragraphs 91-124, at least through its marketing, promotional, and

11   instructional materials, such as a video describing operation of the Accused Product available on

12   a page of Recor's website titled "Educational Resources."  Available at

13   https://www.recormedical.com/educational-resources/, accessed on July 9, 2025; *see also* Ex. K.

14       132.    Recor's infringement of the '085 Patent is willful.  Recor had knowledge of the

15   '085 Patent and its infringement of the '085 Patent at least as early as June 3, 2024.  Despite

16   knowing that its activities infringe the '085 Patent, Recor continues its activities with the

17   specific intent to infringe, without a good faith belief that it does not infringe the '085 Patent or

18   that the '085 Patent is invalid, or despite an objectively high likelihood that its actions constitute

19   infringement of the '085 Patent and that the '085 Patent is not invalid.  Recor's infringing

20   actions are egregious, including by its copying of Medtronic's intellectual property and

21   innovations.

22       133.    Because Recor's infringement of the '085 Patent is willful, and its conduct

23   egregious, enhanced damages under 35 U.S.C. § 284 are appropriate in this case.

24       134.    Recor's infringement has caused and continues to cause damages to Plaintiffs in

25   an amount yet to be determined, of at least a reasonable royalty and/or lost profits damages.

26       135.    Unless and until enjoined by this Court, Recor will continue to directly infringe

27   as well as induce infringement of the '085 Patent.  Recor's infringing acts are causing and will

28

continue to cause irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, a permanent injunction against further infringement is appropriate.

136.    This case is exceptional, warranting an award of attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Plaintiffs respectfully request:

a)  That Judgment be entered that Recor infringes and has infringed one or more claims of the Asserted Patents, directly and/or indirectly, by way of induced infringement, literally or under the doctrine of equivalents;

b)  That, in accordance with 35 U.S.C. § 283, Recor and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, including partners, distributors, resellers and customers, be preliminarily and permanently enjoined from (1) infringing the Asserted Patents; (2) making, using, selling, offering for sale and/or importing any products and/or services that infringe the Asserted Patents; and (3) inducing others to infringe the Asserted Patents;

c)  An award of damages sufficient to compensate for Recor's infringement under 35 U.S.C. § 284, and in excess of $75,000;

d)  A judgment holding Recor's infringement of the Asserted Patents to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

e)  That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiffs be awarded their attorneys' fees;

f)  Costs and expenses in this action;

g)  An award of prejudgment and post-judgment interest; and

h)  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: July 14, 2025                    Respectfully submitted,

TURNER BOYD SERAPHINE LLP

*/s/ Jennifer Seraphine*

Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Jacob S. Zweig (State Bar No. 296129)
zweig@turnerboyd.com
Bethany Bengfort (State Bar No. 312507)
bengfort@turnerboyd.com
Alexander S. Krois (State Bar No. 334346)
krois@turnerboyd.com
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 600
San Mateo, California 94402
Telephone: (650) 521-5930

*Attorneys for Plaintiffs*